[Civ. No. 4531.    Second Appellate District, Division Two.—May 26, 1927.]

## WALTER BEECHER, Respondent, v. JOHN D. STAFFORD, Appellant.

[1] NEGLIGENCE — PEDESTRIAN STRUCK BY AUTOMOBILE — AUTOMOBILE FORCED OFF HIGHWAY BY OVERTAKING CAR—EVIDENCE—JUDGMENTS.—In this action for damages for personal injuries sustained by plaintiff while standing near the highway beside his parked car when struck by defendant's automobile, the evidence was insufficient to support the judgment for plaintiff, where it showed that defendant's car was forced off the road by another automobile attempting to pass it from the rear.

[2] ID.—ABSENCE OF KNOWLEDGE BY DRIVER OF AUTOMOBILE THAT OVERTAKING CAR WAS ATTEMPTING TO PASS—EVIDENCE.—In such action, where there was no evidence that prior to the accident the driver of defendant's car had any knowledge that the overtaking car was attempting to pass him, negative testimony of the occupants of a third car coming from the opposite direction that they did not see the overtaking car hit defendant's car was not evidence that the overtaking car did not strike defendant's car as against the positive, direct, and uncontradicted testimony of the occupants of defendant's car that it did.

[3] ID.—DUTY OF DRIVER OF OVERTAKING CAR—VIEW OF HIGHWAY—MOTOR VEHICLE ACT—INSTRUCTIONS—ERROR.—In such action, the trial court erred in refusing defendant's requested instruction to the effect that if the jury should find that the driver of the overtaking car attempted to pass defendant's car, unless the highway on his left as he proceeded forward was clear and unobstructed for a distance of not less than one hundred yards in advance of the car he was about to pass, in violation of the Motor Vehicle Act (Stats. 1923, p. 557, sec. 122), he was guilty of negligence, which, if directly or proximately contributing to the accident, rendered him solely liable for the resulting injuries.

[4] ID.—ARGUMENT—REMARKS OF COUNSEL—PREJUDICIAL MISCONDUCT.—In such action, where the record disclosed no substantial evidence of negligence on the part of defendant, remarks made by counsel for plaintiff in his argument to the jury suggestive of collusion between defendant and the driver of the overtaking car, who was a co-defendant in the action, to avoid responsibility, constituted prejudicial misconduct on the part of counsel, which was not over-

2.   See 10 *Cal. Jur.* 1158; 10 R. C. L. 1010.

come by the prompt action of the trial court in directing the jury to disregard the remarks.

(1) 42 C. J., p. 1233, n. 27.   (2) 23 C. J., p. 43, n. 83.   (3) 42 C. J., p. 889, n. 81.   (4) 4 C. J., p. 959, n. 90.

APPEAL from a judgment of the Superior Court of Los Angeles County. Charles Monroe, Judge. Reversed.

The facts are stated in the opinion of the court.

W. I. Gilbert for Appellant.

Edward E. Gray for Respondent.

MURPHEY, J., *pro tem.*—This is an action for damages for personal injuries suffered by the plaintiff. The verdict of the jury was in favor of the plaintiff against both of the defendants, and following the verdict judgment was rendered against the defendants for a substantial sum of money. The defendant Reed made no appearance at the time of the trial and the judgment against him, except as to the amount, was by default and by direction of the court. The defendant Stafford appeals from the judgment entered against him and bases his attack upon the grounds, first, insufficiency of the evidence to warrant the verdict, and, second, errors of law committed by the trial court. There is no claim that the plaintiff was guilty of negligence in any degree or at all. [1] The circumstances surrounding the transaction are as follows: The plaintiff had parked his car on the roadside on Whittier Boulevard near the outskirts of the town of Whittier; the car was standing about two feet clear of the traveled highway; plaintiff was standing close to his car and about one and one-half feet from the traveled highway with his back to the east, talking to a friend who was standing at the front and west end of his car. An employee of the defendant Stafford, Miller by name, was driving the Stafford car westerly along Whittier Boulevard, and with him were two other men who were also employees of Stafford, all returning home after a day's work. The defendant Reed was also driving his car westerly along the same road and immediately before the accident was following the Stafford car. At this same time and immediately prior to the accident

a car driven by a man named Kittle was approaching the scene of the accident from the west, traveling in an easterly direction along the boulevard. In this car with the driver Kittle was his wife and another lady. As these cars approached each other and when within less than three hundred feet of each other the Reed car turned out to pass the Stafford car. Seeing this, Kittle slowed down somewhat and proceeded with his car about two-thirds of its width off the traveled highway. When the three cars were opposite each other and almost abreast the Stafford car suddenly swerved to the right and struck the plaintiff Beecher, carrying him from twenty to thirty-five feet, after which he fell to the roadside, the car proceeding for from twenty to thirty-five feet farther before it was brought to a stop. The evidence is substantially as follows: It is not disputed that either the plaintiff Beecher or the witness Anderson, the man to whom he was talking, saw any of the cars until after Beecher was struck. Anderson testifies that the Stafford car carried Beecher about thirty-five feet before he was dropped and that it proceeded thirty-five feet thereafter before it was brought to a stop. Miller, the driver of Stafford's car, testified that he saw Beecher and Anderson near the Beecher car for a considerable distance before the accident, several hundred feet, and that he was driving along the right-hand side of the road and at a rate of speed under twenty-five miles an hour; that immediately before the accident the Reed car cut in on him and hit his fender and front wheel at a time when he was about three feet from the rear of the Beecher car and it swerved his car off and knocked the steering-wheel loose from his hand and he hit Beecher. Browne, an occupant of the Stafford car, testified: ''This Kittle car was coming east, and this Reed car pulled right around in front of us and jammed us—struck the front wheel. When we went back to look there was a mark in the tire. We looked on the Red car and the hub cap was bruised, and the first thing I knew was we hit this fellow that was standing beside the car, and he turned right over on the fender and bumped off the side. We carried him 25 or 30 feet and we traveled 25 or 30 feet after he dropped off.'' Olson, another occupant of the Stafford car, testified as follows: ''As we got up there the second car coming behind us, I should judge he was about three feet out in the street from

our side of the car, and as he got up about the center of us, he turned into an angle of about 20 or 25 degrees and he hit us—he hit our fender with his center of the car, but in the meantime we hit Mr. Beecher. . . . He came up behind, and as he reached the middle of our car he changed his course and cut in on us. He struck our car. The center of his car struck our fender or thereabouts; something like that. As far as I remember it was the center of his car that struck us." [2] There is no evidence in the record to show that prior to the accident the driver of the Stafford car had any knowledge that Reed was attempting to pass him. There is evidence that no horn was blown nor any warning given. It will be observed that these three witnesses testified positively that the Reed car struck the Stafford car and that its course was deflected toward Beecher. The testimony of the other eye-witnesses, the occupants of the Kittle car, is negative in character, and it is upon this negative evidence that the plaintiff must and does rely to sustain the verdict of the jury. No one of these witnesses contradicts the testimony given by the witnesses in the Stafford car, these witnesses in effect saying that they did not see the Reed car strike the Stafford car. Kittle, the driver says: "I did not look at the cars as they were passing, I was watching my own tracks." Mrs. Kittle testified: "We were all almost abreast when the boy was struck, our car was perhaps a little to the east," and Mrs. Walker, the other occupant of the Kittle car, testified that they were almost abreast and that she did not know whether they struck or not. The above is substantially all the evidence as to the happening of the accident except a diagram drawn by the witness Miller to which we will advert later. Under the circumstances above set out it is not strange that the parties in the Kittle car did not see the cars strike. The driver, as he says, was attending to his own business, and if the body of the Reed car was between the Stafford car and the point of contact it would be practically impossible for the other occupants of the Kittle car to see what occurred as between the Reed and the Stafford cars. In addition to this negative character of evidence the respondent relies upon a diagram made by the driver of the Stafford car. An inspection of this diagram, however, gives little comfort to the plaintiff and in nowise negatives the meeting

of the cars.  The Reed car as drawn is pointed directly toward the course of the Stafford car.  A projection of the lines of the courses of travel of these two cars will bring them together at the very point designated by the occupants of the Stafford car as being the place where the cars actually collided.  In this connection it may be said that under all the circumstances of the case as above outlined the happening of the accident as detailed by the appellant's witnesses is both reasonable and probable.  Reed was attempting to pass the Stafford car at a time when the Kittle car was approaching from the opposite direction and at a time when the attempt was in direct violation of the statute.  Under such circumstances it was natural and probable, if not inevitable, that he should attempt to cut in ahead of the Stafford car to avoid meeting the Reed car.  Miller, Browne, and Olson had the opportunity to observe the contact of appellant's car with that of his co-defendant Reed.  The other witnesses in the Kittle car, in all probability, did not have such opportunity of observation, and in any event if they did, they did not avail themselves of seeing it.  At the most, their testimony is of a negative character, and as against the positive, direct, and really uncontradicted testimony of Miller, Browne, and Olson, it is not evidence that Reed's car did not strike that of the appellant.  In the case of *Gage* v. *Billing*, 12 Cal. App. 691 [108 Pac. 666], the district court of appeals said: "Although Pohli was a witness and in court, and must have known whether or not defendant told the truth, he did not contradict or deny the defendant's testimony, and we find nothing in his testimony given in support of plaintiff's cause of action that necessarily or at all contradicts the testimony of the defendant as to the terms upon which he was employed or requested to find a purchaser for the property.  We are not unmindful of the rule that it is not always necessary that a witness be expressly contradicted to raise a conflict.  For testimony may be so improbable or contradictory in itself as to justify its belief.  But no such case as that is presented here."  In the same case the court says: "The two persons who knew the facts were both in court.  One, the defendant, gave specific testimony, not improbable, but entirely reasonable and showing a contract in accordance with the usual custom in such cases.  He was not impeached in any way, was not

even cross-examined as to the evidence in question. The other person, Mr. Pohli, did not contradict such witness, and gave no testimony necessarily in conflict with this explicit testimony of the defendant. In such a case the testimony of the witness explicitly testifying to the particular facts should be taken as true. (*Newton* v. *Pope,* 1 Cow. (N. Y.) 109; *Lacy* v. *Wilson,* 24 Mich. 479; *Matthews* v. *Lanier,* 33 Ark. 91.)'' The case of *Leal et ux.* v. *Martin,* 59 Cal. App. 760 [211 Pac. 853], is directly applicable to the facts of this case: ''It is not argued that respondent was guilty of negligence *per se* or that he violated any statute relating to the manner of the operation of the automobile upon the public highway other than the provisions of section 22, subdivision A of the Motor Vehicle Act (Stats. 1919, p. 220), which requires that one operating a motor vehicle on the public highway shall de so in a careful and prudent manner and at such a rate of speed as shall not endanger the life or limb of another. (In passing it may be well to state that the trial court instructed the jury in this case: 'If you find from the testimony that the defendant Stafford was driving or operating his automobile along the right-hand side of the highway at a legal rate of speed—and the court instructs you that he was going at a legal rate of speed; there is no evidence here sufficient to warrant you in finding that he was going at an excessive rate of speed—if you find from the testimony that the defendant, Stafford, was driving or operating his automobile along the right-hand side of the highway at a legal rate of speed, and that the driver of the passing car, A. H. Reed, suddenly and without warning, cut his car sharply to the right and collided with or forced the car of defendant, Stafford, to the right, and thus caused the injury, then your verdict would be in favor of the defendant Stafford.') '' The court concludes: ''When reliance is placed upon this provision of the statute, it is necessary to prove that the vehicle was not operated in a careful or prudent manner or that it was operated at an unreasonable rate of speed.'' [3] The appellant requested the court to give the following instruction to the jury, which was refused: ''You are instructed that the defendant Reed, under the Motor Vehicle Act, had no right to pass the car of the defendant Stafford, in the highway, unless the boulevard on his left as he proceeded

forward was clear and unobstructed for a distance of not less than one hundred yards in advance of the car he was about to pass. Therefore, if you shall find that the defendant Reed, at the time he attempted to pass the car of his co-defendant, Stafford, knew there was an automobile approaching the automobiles of the two defendants at a distance of less than one hundred yards from them at the time the defendant Reed attempted to pass Stafford, then I instruct you that the defendant Reed was guilty of negligence; and if you shall find that such negligence directly or proximately contributed to the happening of the accident, then your verdict will be in favor of the plaintiff and against the defendant Reed, but in favor of the defendant Stafford, unless you shall find that Stafford himself was guilty of negligence directly or proximately contributing to the happening of the accident.''

The instruction should have been given. It is clearly the law, and was pertinent to the determination of the issue submitted to the jury for consideration.

[4] Lastly, it is contended on the part of the appellant that opposing counsel were guilty of misconduct that tended to prejudice the jury against him, which alleged misconduct as disclosed by the transcript is as follows: The attorney for plaintiff, during the course of his argument to the jury, started to read to the jury the answer of the defendant A. H. Reed, and the following proceedings were had: ''The Court: Mr. Reed is not here, and you cannot read what he said in his answer against the other defendant. Mr. Gray: He is not here because somebody wants to get out of this. Mr. Gilbert: I object to any such statement as that. The Court: That is misconduct and the court so adjudges. Now, proceed with the argument against the defendant. The jury must not pay any attention to that. Proceed.'' The action of the court in promptly directing the jury to disregard the statement of counsel went as far as possible to eliminate any unfavorable impression from the minds of the jury, but in view of the fact that the record in this case discloses no substantial evidence of negligence on the part of the defendant Stafford, the failure to give the foregoing instruction and the implied impropriety of a collusive arrangement as between the co-defendants are cir-

cumstances that may well have had potential influence in causing the jury to penalize the defendant Stafford as it did do through its adverse verdict.

We are entirely satisfied that irrespective of any error of law or any misconduct on the part of counsel for the plaintiff, the verdict in this case as against the defendant Stafford is not supported by the evidence and that the judgment must be and is as to him reversed.

Works, P. J., and Thompson, J., concurred.