[Civ. No. 9412. Second Appellate District, Division Two.—June 14, 1935.]

HELENA SWYNY, a Minor, etc., Respondent, v. R. E. CAYLOR et al., Appellants.

Frank P. Doherty and William R. Gallagher for Appellants.

E. Neal Ames for Respondent.

FRICKE, J., *pro tem.*—Plaintiff and her sister rented an apartment from appellants on November 1, 1931, and occupied the same up to March 16, 1932, on which day a door, to which the folding bed being occupied by them was attached, fell across the bed, causing the personal injuries for which plaintiff recovered damages in the trial court.

The testimony in the record is at many points ambiguous and unintelligible, being replete with descriptions, demonstrations and illustrations by various witnesses of the construction, installation, operation and condition of the door, bed and attached hardware, which testimony and the questions of counsel repeatedly employ the words "this", "that", "this way", "that way", "here" and "there", without any indication in the record as to what the witness had reference or the physical demonstration accompanying the testimony. While such testimony was no doubt understandable to the trial court and jury, it is of no assistance to an appellate tribunal which has before it only the words of the witnesses.

The facts, as we are able to gather them from the record, are that on March 16, 1932, respondent and her sister retired, and shortly after they fell asleep the door to which the head of the folding bed was attached fell across the bed, severely injuring respondent. The bed was a "Marshall-Stearns" folding bed, with the head thereof attached to the door of a closet, the door being pivoted at the center of its top by fittings and a movable pin in the door and door frame, and pivoted at the center of the bottom edge of the door by a fixed pivot with a conical tip resting in a corresponding socket set in the floor. The foot end of the bed could be raised and the bed thus folded up against the door, and while in that position the door could be revolved to move the bed out of or into the closet. The bed and door formed one complete device and were both made by Marshall-Stearns Company. Both parties agree that the fittings constituting the fixed pivot at the bottom of the door were standard Marshall-Stearns fittings. Appellants contend this was also true of the fittings at the top of the door, but respondent contends that, while the top fitting in the door itself was of Marshall-Stearns manufacture, the fitting in the door frame or header

and the pin which constituted the pivot at the top were not Marshall-Stearns fittings but "bootleg" fittings, which by reason of their inadaptability and the manner of installation caused the accident. The liability of appellants depends largely upon the correctness of this latter contention, which appellants assert is not supported by any evidence.

The contention that the fitting in the header at the center of the top of the doorway and the loose pivot pin inserted in the fittings at that point were not Marshall-Stearns fittings is based upon the testimony of one Winters that he had for a number of years been employed in the installation of folding beds and Marshall-Stearns fixtures, and that as long as he worked for the Marshall-Stearns Company and its representatives the pin was—"as far as I know . . . it has always been a piece of pipe". When asked as to the solid pin which came from the bed here involved, Winters testified: "I have never seen any like that, either." As to the flat plate in the top of the doorway, or "header", the witness stated: "I don't remember ever seeing any like that." Obviously the fact that the witness had not seen or did not remember seeing such fittings in the course of his employment established merely that the witness was unacquainted with them. This did not establish the fact that the fittings used were not Marshall-Stearns fittings, and is merely negative testimony. The distributor of Marshall-Stearns beds testified that the solid pin which was used in the bed in question and the fitting in the top of the door were Marshall-Stearns fittings; that the bed fittings were furnished and installed by Marshall-Stearns and that he himself sold the bed in question and had it installed. As against this positive, uncontradicted and reasonable testimony the negative testimony of the witness Winters has so little probative force that the testimony of the witness who sold and installed the bed must be taken as true. (*Beecher* v. *Stafford,* 83 Cal. App. 408 [256 Pac. 870].)

It may also be noted that the hole in the fittings in the top of the door, conceded by both parties to be a Marshall-Stearns fitting, is five-eighths of an inch in diameter, and that the solid pin which was in the door is slightly less than five-eighths of an inch in diameter, but that the fittings introduced in evidence by respondent to illustrate the type of Marshall-Stearns fittings with which a hollow pin or piece of pipe

was intended to be used have holes three-fourths of an inch in diameter. As the hollow pin used with such fittings would be only slightly less than three-fourths of an inch in diameter, it is obvious that a pin of that size could not have been inserted in the fittings in the door or header, both of which had only five-eighths inch holes. There is also testimony of an experienced mechanic that the fitting in the header had never been removed.

We must conclude that the fittings in the door were Marshall-Stearns fittings and that they were the fittings used when the bed was originally installed.

■ Respondent's contention that appellants knew of the defect in the mechanics of the bed which caused the accident is based upon the fact that to appellants' knowledge a crack in the door was repaired in 1928 and that in 1932 the bed after being folded fell back into the closet. It appears that the repair in 1928 made the door as good as new, and that the fall of the bed on the subsequent occasion was not due to any break, damage or defect of the door or bed but to the fact that an excessive amount of bedclothing interfered with the secure closing of the bed. Neither of these occurrences involved the pivots of the bed; there is no evidence that either pivot was injured on either of these occasions and there is shown no causal connection between those incidents and the accident here involved. We believe there is no evidence to support the conclusion that appellants had any knowledge of that which caused the accident.

■ Respondent's cause of action and right to recover damages are based upon the contention that the door fell because of defective mechanism causing the pin forming the pivot at the top of the door to work upward into the uppermost fitting and header until such pin left the door, which then, being without support at the top, fell forward over the bed. This theory is based upon the fact that there was nothing in the type of construction which would prevent the pin from going upward to such extent, but that the construction was such that the pin could not have dropped down into the door far enough to clear the fitting in the heading. Respondent relies, as support for this theory, upon the fact that shortly after she was removed from the bed by persons who rushed in after the accident, the solid pivot pin from the top of the door was found inside and on the floor of the closet.

The theory of respondent is based on the premise that there can be no other cause for the falling of the door. In presenting her argument respondent asserts that the construction of the fittings was such as to cause the solid pivot pin to slant in the fittings and therefore to creep and work upward by reason of the movement of the door; but the sole discoverable basis for this claim is the assertion of her counsel. The assertion overlooks the fact, shown by an examination of the exhibits, that the fitting in the top of the door consisted of a metal plate with a hollow sleeve or barrel set at right angles, the sleeve being about three inches long, the pin fitting into the hole through the sleeve much as a piston in a cylinder, and that this fitting alone would not permit the claimed slanting of the pin, regardless of whether the fitting in the header was of the type used or of the sleeve type. The finding of the pin in the closet, while not inconsistent with the theory that it fell there out of the top of the door casing, is not inconsistent with the various other theories which present themselves. Even respondent's counsel apparently realized this, since he suggests at one point in his brief that the pin "bounced back into the closet". Even conceding, however, that the pin fell directly to the spot where it was found, this does not establish whether it fell from the header or was jarred from the top fitting of the door.

There being an absence of evidence to prove the fact, respondent urges that it is a matter of common knowledge that by reason of the type of fittings used the solid movable pin would by the swinging of the door creep and move up and allow the door to fall. We cannot agree that this is a matter of common knowledge and that the jury could, without evidence, indulge in the assumption that the pin was thus caused to move upward. No proof was offered that such a physical result had ever occurred under similar conditions or by evidence of experiments, and the expert evidence tendered by respondent was excluded by the trial court, although in our opinion the subject-matter was one in which expert testimony was admissible. It was uncontradicted that, in addition to its use by former tenants for several years, respondent and her sister had used the bed for four and a half months prior to the accident, had noticed nothing to indicate that it was not in good mechanical condition, and that the door during all this time swung around very easily.

The statement by one of appellants, made after the accident, that she did not know why the bed had fallen, unless it "might have been" sprung or damaged at the time it fell back into the closet, is of no effect as proof of how the accident occurred, since it amounts merely to a speculation of a person who, having no knowledge or opinion of the cause of the accident, was groping for a possible theory.

The case of *Fisher* v. *Pennington,* 116 Cal. App. 248 [2 Pac. (2d) 518], which respondent contends is directly in point, is readily distinguishable from the case at bar, for in that case it appeared that the floor below the door had sagged so far that by the resultant lowering of the door the upper-pivot pin extended but one-fourth of an inch into the header fitting, so that the placing of an appreciable weight on the bed would cause the pivot pin to pull out of the fitting and the door would fall. There the cause for the falling of the door was clearly demonstrated; here it is left to conjecture and speculation; and there is a total absence of proof as to what caused it to fall and consequently no proof upon which a liability for damages could be imposed upon appellants.

The judgment is reversed.

Crail, J., and Stephens, P. J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 11, 1935, and an application by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 12, 1935.